## LITES v. ADDISON.

1. A party may take such exceptions to a charge as he pleases, and neither the opposing party nor the Circuit Judge can amend those exceptions. Hence it follows, that matters which appear only in the exceptions, are not otherwise a part of the case, and cannot be considered by this court.

2. Where the maker of a past due note was asked by one about to purchase it whether it was all right, and the maker replied that he had given the note, that it was all right and he expected to pay it in January, such maker cannot afterwards defeat a recovery thereon by such purchaser upon the ground of failure of consideration.

3. The representation thus made was not of something in the future, nor the mere expression of an opinion; nor can it be said to have been made in ignorance of the facts, because that further time was necessary to determine whether the consideration of the note would answer the purpose for which it was intended.

4. A representation by the maker of the validity of a past due note will work an estoppel in favor of the purchaser, acting under such representation, even though it was made without intent to deceive.
5. Estoppel need not be specially pleaded—certainly not as to a defence which is set up in an answer that requires no reply.

Before FRASER, J., Abbeville, November, 1886.

This was an action by Joel W. Lites and D. J. Wardlaw against W. P. Addison. The opinion sufficiently states the case.

*Messrs. Parker & McGowan,* for appellant.

*Messrs. Cason & Bonham,* contra.

July 19, 1887. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action on a note, dated June 24, 1885, payable one day after date, to A. A. Traylor, for two hundred and seventy-five dollars, given by the defendant; the plaintiffs claiming that the note had been duly transferred to them for value. The execution of the note was admitted and the defence set up was failure of consideration. The defendant having admitted the plaintiffs' case, became the actor and undertook to establish his affirmative defence. For this purpose he offered testimony tending to show that in June, 1885, he contracted with Mrs. Lyon, through her husband and agent, for the purchase of a jackass, warranted to be sound and suitable for the purpose for which such animals are usually wanted, at the price of four hundred and fifty dollars, and gave her his note for that amount. A few days afterwards Mrs. Lyon, being indebted to Traylor in the sum of two hundred and seventy-five dollars for the purchase of two horses, as was alleged, proposed to defendant to divide his note into two notes, so that she might thereby settle her indebtedness to Traylor. To this proposition defendant assented, and accordingly took up his $450 note and gave instead thereof two notes—one to Mrs. Lyon for one hundred and seventy-five dollars, and the other to Traylor directly for the balance, the latter being the note upon which this action was brought. Subsequently, and after this note became due, Traylor duly trans-

ferred the note to plaintiffs for value received of them in the purchase of a house in McCormick.

Some time in the fall of 1885 (but at what particular time is not stated), the plaintiffs, with a view to the trade with Traylor, applied to the defendant to know whether he had given the note, and whether it was all right, to which defendant replied that he had given the note, that it was all right, and that he expected to pay it the first of January. Upon this information the plaintiffs traded for the note. It also appeared that when suit was commenced on the $175 note, the animal was returned to Mrs. Lyon on account of his unsoundness, or rather his unfitness for the purpose for which he was wanted, the suit was withdrawn and Mrs. Lyon resold the animal to another party. It may be assumed for the purposes of this appeal that the following facts were established : that the real consideration of the note sued on was the purchase money in part of the jackass, and that there was a failure of consideration, leaving as the only seriously contested question the effect of the statements made by the defendant to the plaintiffs when they, in contemplation of the trade with Traylor, approached him upon the subject.

The Circuit Judge instructed the jury as to this substantially as follows : That if they believed the testimony as to what passed between the plaintiffs and defendant in regard to the note before it was purchased, then the defendant has thereby estopped himself from pleading a failure of consideration as against these plaintiffs. To use the language of the Circuit Judge, speaking of the defendant: "If he induced somebody else to pay valuable property, the maker of the note would be estopped. * * * I charge you that if the defendant in this case, after the note became due, misled the purchaser of that note, and made no reservation at all as to any expectations of unsoundness, he cannot now set up that defence." The jury having found for the plaintiffs the full amount of the note, the defendant appeals upon the several grounds set out in the record, as follows :

I. Because his honor refused to charge defendant's request, viz., "That if the consideration of the note sued on was part of the purchase money of the jackass sold to defendant, and the plaintiffs received it after due and the consideration has failed,

the defence of failure of consideration, if proved to the satisfaction of the jury, must prevail, and the verdict must be for the defendant."

II. Because his honor refused to charge the request of defendant: "That the mere statement that the note was a good note, and that he expected to pay it in January, did not estop the defendant from pleading failure of consideration. That to estop defendant the declarations used must have been intended to deceive the plaintiffs, and that if defendant spoke the truth in reply to a question asked, he is not estopped."

III. Because his honor charged "as matter of law, that under the evidence the defendant was estopped from setting up failure of consideration."

IV. Because estoppel, if relied upon by plaintiffs, should have been specially pleaded, or notice of such defence given to defendant, so that he would not be taken by surprise.

V. Because the question should have been submitted to the jury whether there was any intentional misrepresentation by defendant to plaintiffs, or any inducement held out to them to take the note, which would act as an estoppel to the defence of failure of consideration.

VI. Because his honor refused to hear a motion for a new trial on the minutes, although the notice had been given, and "surprise" and "after-discovered evidence" was one of the grounds upon which the new trial was to be asked.

VII. Because the judgment is in all respects contrary to the law and evidence of the case.

The first two exceptions might be disposed of by the remark that the "Case," as prepared for argument here, fails to afford any evidence that any such requests as are therein set forth were ever submitted to the Circuit Judge. It is true that it does appear from the charge of the Circuit Judge, as set forth in the "Case," that some request was submitted by the defendant, where he says: "I cannot charge you as requested by the defendant;" but what the request was nowhere appears except in the grounds of appeal or exceptions; and that, as we have frequently had occasion to say, is not sufficient, for the reason that while the "Case" as submitted by the appellant is open to amendment, as

well by the counsel for respondent as by the Circuit Judge when it is submitted to him for settlement, the exceptions of appellant cannot be so amended. Hence when facts are incorrectly stated, or requests to charge are not properly represented in the "Case," such errors may be corrected by amendment, but when they are found only in the exceptions, they are beyond the reach of amendment, and therefore cannot be regarded by this court. But as we are always desirous to avoid, if possible, the necessity of resting our conclusions upon points not involving the merits, we are glad to find that there is enough in other portions of the record to enable us to consider the questions which, as we understand, were intended to be raised by the first and second exceptions.

From what is said in the charge of the Circuit Judge, we infer that the request as stated in the first exception was submitted and refused by him in the language above quoted from his charge, and we think properly refused. The Circuit Judge, after instructing the jury that if the note was purchased after maturity, and without notice of any defect that there might be in it, the note would still be, even in the hands of the innocent holder, subject to any defence which such defect might warrant, goes on to add: "But if the maker of the note mixes himself up with it, then the case will stand upon a different ground," and therefore he could not charge in this case as requested by the defendant; for he could not charge the latter part of the request, which in effect called upon him to instruct the jury that if the failure of consideration was established, then "the verdict must be for the defendant," as that would ignore the effect of the estoppel to such defence set up by plaintiffs.

As to the second exception, the "Case" affords no evidence whatever that any such request was ever submitted to or refused by the Circuit Judge, and therefore, under the rule above stated, we could not consider it unless we can find in some of the other exceptions enough to raise the same questions which we infer the second exception was designed to raise. It seems to us that the object of this exception was to present two questions. 1st. Whether the statements made by defendant to plaintiffs, when about to trade for the note, were sufficient to raise an estoppel. 2nd. Whether it was necessary that such statements should have

been made by the defendant with *an intent to deceive* the plaintiffs, in order to make the estoppel effectual. The third exception may, we think, be construed as raising the first of these questions, and the second is raised by the fifth exception, when read in connection with the third. The language of the third exception might leave it somewhat doubtful whether its object was to impute error to the Circuit Judge in charging on the facts—taking questions of fact from the jury—and instructing them as matter of law that the evidence submitted was sufficient to establish the estoppel, or whether the purpose was simply to raise the legal questions whether the testimony adduced, if believed, would raise the estoppel. But inasmuch as it is perfectly manifest that the Circuit Judge, so far from taking any question of fact from the jury, seems to have been particularly careful to leave every such question to the jury, without any intimation as to his own opinion, we presume that the latter was the real object of the exception; and if so, then it is the same as that proposed by the first branch of the request as stated in the second exception, and the question is properly before us for consideration.

The point, then, for us to determine is, whether the representation made by the defendant to the plaintiffs before they traded for the note, in regard to its character, was, if proved, sufficient to estop him from afterwards denying the truth of the statement then made. In considering this question, it would be well to bear in mind the nature of the property in regard to which the statement was made. It was a note, negotiable in form, though it had lost its negotiability—being past due at the time. When a person executes a negotiable note in favor of another, he thereby, in the eye of the law, invites the world at large to trade for it without inquiring into its origin or consideration, and no representation by him is necessary to fix his liability absolutely, no matter how defective the consideration may be. But when such a paper becomes past due, and thereby loses its negotiability in the full sense of that term, and one wishes to trade for it, he is warned by the fact that it is past due that further inquiry is necessary, in order to fix the liability of the maker, and if he takes a transfer without such inquiry, he must bear the consequences if the maker, when called upon for payment, is able to

show that the consideration has failed, or that there is any other valid defence to the note. But if, before taking the transfer, he makes inquiry of the maker, and learns from him that "it's all right," and is thereby induced to make the trade, it would seem that, upon the same principle, he ought to be protected. If the purchaser of a note strictly negotiable is protected because the maker has, by putting such paper in circulation, *impliedly* represented to any one who may purchase it that it is all right, it does seem that one who has purchased upon a similar representation *expressly* made to him by the maker, should be entitled to the same protection. Any other view would operate a fraud on the purchaser, whether so intended or not.

It is urged, however, that a representation to raise an estoppel must be a statement of existing or past facts, and not of something in the future—not a mere statement of opinion or intention; and it is argued that the statement relied on here was of the latter character. We do not so understand it. The defendant must necessarily have known, when the plaintiffs inquired of him, with a view to purchase the note, whether it was all right, that their object was to ascertain whether he had any defence or offset to it, and his reply can only be construed to be an assurance that he had none. The additional remark—"I expect to pay it in January"—relied on to show that the representation made was nothing more than a declaration to do something in the future, cannot be so construed in the connection in which it was used. If this remark stood alone, then possibly it might be so construed, though even then when made in response to the inquiry whether the note was all right, it would be more properly construed as an assurance of the highest kind that the note was all right, and because it was all right he expected to pay it. But when considered in the connection in which it was used, we think it clear that the purpose of the additional declaration of an expectation to pay in January was simply to intensify his previous statement that the note was all right. We cannot doubt that the defendant intended at the time by his reply to the inquiries made of him, to assure the plaintiffs that, so far as he was concerned, they would be entirely safe in trading for the note.

Again, it is urged that the representation to raise an estoppel

must be made with knowledge of the facts, and that here the defendant did not at the time the representation was made, know the facts upon which he bases his defence of failure of consideration, inasmuch as he had not then had the animal in his possession long enough to ascertain whether he would come up to the warranty. But he did know that the note was given for the purchase money, in part, of the jackass; he knew the nature of the warranty upon which he had made the purchase; he knew the time that it would require to enable him to ascertain fully whether the animal would come up to the warranty; and he must have known that the object of the plaintiffs' inquiry was to learn whether there was any defect in the note before they traded for it. Knowing all these facts, if his intention had *then* been to make his liability depend upon the result of the season's operations, he could not have correctly answered as he did. He could not have answered, "Yes, the note is all right," if the question as to whether it was all right was to depend upon a future contingency. The only proper answer he could have given, under the supposition made, would have been, "I cannot *now* say whether it is all right or not, as that will depend upon the result of the season's operations." Instead of this he makes an explicit declaration, without any qualification whatever, that the note was all right, and emphasizes it by an expression of his purpose to pay the note on the first of January—but a very short time after the statement was made, and probably before he could have fully ascertained whether the jackass would come up to the warranty. It seems to us clear that the representation relied on for the purpose of raising the estoppel was amply sufficient, and if, as we must assume from the verdict of the jury, the plaintiffs were thereby induced to trade for the note, the defendant is estopped from setting up the defence of failure of consideration as against these plaintiffs. Having assured them when they were about to trade for the note that it was all right, the defendant cannot now, when called upon to pay, be heard to say that the note is not all right.

Our next inquiry is whether the Circuit Judge was in error in failing to submit to the jury the question whether there was any intentional misrepresentation by defendant to the plaintiffs—any

intent on his part to deceive the plaintiffs. Inasmuch as the "Case" does not show any request so to charge, its omission cannot be imputed as error. Indeed, we are unable to discover anything in the testimony which would render such an inquiry pertinent, for we see nothing that even tends to show that the defendant had any intent to deceive the plaintiffs. This being so, the question whether it was necessary that there should be an intent to deceive may possibly be raised under the general terms of the third exception. We will proceed, therefore, to inquire whether, in the absence of any intent to deceive, the Circuit Judge was in error in instructing the jury that the evidence, if believed, was sufficient to raise the estoppel.

It must be admitted that upon this question there is a conflict of authority, as may be seen by reference to the cases cited in the ingenious argument of the counsel for appellant. This question has been so fully and satisfactorily discussed in the case of *Horn* v. *Cole*, 51 (*N. H.*, 287; *S. C.*, 12 *Am. Rep.*, 111), that we shall content ourselves with a simple reference to it, not so much for the point there actually decided, as for the elaborate review of the authorities, where, we think, it is shown that the weight of the more recent authority, both in England and this country, is in favor of the proposition that *the intent to deceive* is not an essential element in raising an estoppel. That case, it is true, is questioned in the subsequent case of *Kinney* v. *Whiton* (44 *Conn.*, 262; *S. C.*, 26 *Am. Rep.*, 462), but only in so far as it holds "that a person who gets at second-hand a declaration not intended for the public and not intended for him, may act upon it as safely as the person to whom it was addressed, and for whom alone it was intended." And this qualification of the preceding case is placed upon the ground that, "where the declaration was intended only for the person to whom it was addressed, the party making it has assumed no obligation to any other person. A by-stander who casually overhears a conversation has no right to appropriate to himself, without further inquiry, what was intended for another." Here the representation was made to the plaintiffs directly, unquestionably with the expectation that they would act upon it, as they did do, and to permit the defend-

ant now to repudiate such representation, would operate a fraud on the plaintiffs, whether so intended or not.

We are unable to discover anything in the "Case" which would serve as a basis for the sixth exception; nothing to show that any motion for a new trial, upon any ground, was ever submitted to the Circuit Judge.

The fourth exception cannot be sustained. In *Bigelow on Estoppel*, 532, it is said: "As it is not necessary, clearly, to plead an estoppel *in pais*, in the absence of a statute, there is little to be said on the subject." We have no statute requiring it to be pleaded. Indeed, under the system of code pleading we do not well see how the estoppel could be pleaded in a case like this. The plaintiff could not by reply do so, as that pleading is only permissible where a counter-claim is set up by the answer, or where the court in its discretion may, on the defendant's motion, require a reply, which was not the case here.

The seventh exception, as has often been held, is too general to require any further notice.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON. I concur on the ground stated in the opinion, to wit, "estoppel." But even supposing this was error, then I think the result could be sustained on the ground that the note to Traylor, assignor, was not based on the purchase of the jackass as a consideration, but upon the giving up by him of a claim on Mrs. Lyon, which was a sufficient consideration, and which has not failed.