## 6840

### J. C. STEVENSON CO. v. BETHEA.

1. Estoppel.—Principal and Agent—Notes.—Where the maker of a
note and chattel mortgage delivers them to the payee for the purpose
of using them as collateral for money to be paid to another for
benefit of maker, but the payee, on failure to borrow the money,
keeps the papers for some time and transfers them to another, who
advances to the transferrer cash and groceries, and to the maker
some groceries, there being an account between maker and payee,
the maker is estopped from saying the act of the payee in trans-
ferring the papers was not authorized by him.

2. Evidence—Notes.—That the maker of a sealed note owed the payee,
to whom it was entrusted for a special purpose, on open account,
but who had used it for a different purpose, is competent as explana-
tory of the conduct of the parties.

Before Gage, J., Marion, Spring Term, 1906. Affirmed.

Action by J. C. Stevenson Company against P. W.
Bethea. From judgment for plaintiff, defendant appeals
on the following exceptions:

First. "Because his Honor erred, it is respectively sub-
mitted, in not directing a verdict for the defendant at the
close of the testimony in the case, as defendant established
every material allegation of his answer, and there was no
testimony or evidence tending to dispute the testimony
adduced by defendant in support of the material allega-
tions of his answer.

Second. "Because his Honor erred, it is respectfully sub-
mitted, in holding that the issue made at the recent trial
was a 'new issue and was not passed upon by the Supreme
Court.'

Third. "Because his Honor erred, it is submitted, in
charging the jury on the subject of estoppel, there being
no proof that Bethea ever 'made an admission, or did an
act about the note and mortgage in question, with intent to
influence the conduct of Stevenson or that Bethea had

reason to expect would influence the conduct of Stevenson, which admission or act by Bethea was inconsistent with the claim he now makes.'

Fourth. "Because his Honor erred not only in charging the jury on the subject of estoppel, when there were no facts in the case applicable to such charge, but also in making a deliverance on the subject of estoppel, before the plaintiff had closed his case, thus confusing the minds of the jury as to the real issues in the case.

Fifth. "Because his Honor erred in refusing to charge defendant's first request, which was as follows: 'If a party executes a note under seal and a mortgage to secure same to another with the express understanding that the latter is to negotiate them for money to be used in the payment of a certain debt due a third person, by the maker of said papers, the party in whose favor the papers were drawn would be an agent for said purpose and he could not legally transfer the papers except in accordance with his understanding with the makers of the papers.'

Sixth. "Because his Honor erred in refusing to charge defendant's second request, which was as follows: 'If such agent should assign such papers to another as collateral for goods, and drafts drawn, and all used in his, the agent's business, and all in violation of the terms of his agency, the party taking such papers could not enforce the collection of them in the courts of this State.'

Seventh. "Because his Honor erred in refusing to charge defendant's third request, which was as follows: 'If B. S. Ellis, the mortgagee of the chattel mortgage in this case, which was given to secure a sealed note, assigned it to the plaintiff, the plaintiff as assignee took both note and mortgage burdened with all trusts, if any, to which it was subject in the hands of said B. S. Ellis.'

Eighth. "Because his Honor erred in refusing to charge defendant's fourth request, which was as follows: 'There is all the difference in the world in law between a promis-

sory note and a single bill; for when the former is passed for value before maturity into the hands of a new holder, the maker loses all right to question its character. Not so as to a single bill, a sealed note; for when it is assigned to a third person, such third person or assignee takes it with all the infirmities it had when in the possession of the original obligee. The obligor can show that the single bill or sealed note was without consideration or is void from any cause.'

Ninth. "Because his Honor erred in refusing to charge defendant's fifth request, which was as follows: 'If B. S. Ellis took the papers in question for the sole purpose of raising money for P. W. Bethea to be applied to a debt due a third party by P. W. Bethea, and if instead of raising money on them he transferred them to J. C. Stevenson Company with the understanding that he would get for them mostly groceries and a small amount of money, and if he did later get groceries thereon for himself and drew drafts in favor of other parties than P. W. Bethea and not for P. W. Bethea, and he used the groceries and proceeds of the drafts in his own business, this would be a breach of his trust and the plaintiff could not recover in this action.'

Tenth. "Because his Honor erred in refusing to charge defendant's sixth request, which was as follows: 'If B. S. Ellis took the papers in question for the sole purpose of raising $750 for P. W. Bethea to be applied to a debt due a third party by P. W. Bethea, and if instead of raising money on them he transferred them to J. C. Stevenson Company with the understanding that he would get groceries for them and did get groceries and $256.82 for himself thereon, he would thus be acting without authority and Bethea would not be bound thereby.'

Eleventh. "Because his Honor erred in refusing to charge defendant's seventh request, which was as follows: 'If a party executed a sealed note and mortgage to secure same in favor of another, with the express understanding that the party in whose favor they are executed is to sell them for

cash, and if the mortgagee disregards the understanding and sells them for groceries or for some groceries and a small amount of cash, the assignee could not enforce the collection of said papers out of the maker.'

Twelfth.  "Because his Honor erred in refusing to charge defendant's eighth request, which was as follows: 'The defendant is not required to split up the liability under the note and mortgage sued on to prevent a loss to the plaintiff. In law this defendant has a right to stand upon his contract as he made it.'

Thirteenth.  "Because his Honor erred in refusing to charge defendant's ninth request, which was as follows: 'The question of what Bethea may have been due Ellis at the time the papers in question were given can have no bearing on this case unless they were given to secure that indebtedness.'

Fourteenth.  "Because his Honor erred in refusing to charge defendant's tenth request, which was as follows: 'If Ellis used the papers in question for a different purpose than that for which they were given and Bethea did not ratify his act, then your verdict must be for the defendant.'

Fifteenth.  "Because his Honor erred in refusing to charge defendant's eleventh request, which was as follows: 'If the defendant, Bethea, has established the allegations of his answer by a preponderance of the testimony, then your verdict must be for the defendant.'

Sixteenth.  "Because his Honor erred in refusing to charge defendant's twelfth request, which was as follows: 'What Bethea may have been due Ellis either before or after the transfer of the papers to Stevenson Company can have no bearing on this case unless the papers secured such debt.'

Seventeenth.  "Because his Honor erred in refusing to charge defendant's seventeenth request, which was as follows: 'The assignment being for "all my right, title and interest" the assignee, Stevenson, would take no better title than Ellis had, and if Ellis could not legally transfer the

papers for groceries and some money, his assignment for such a consideration is a nullity.' "

*Mr. Jas. W. Johnson,* for appellant, cites: *Mortgage is only a security for a debt:* 38 S. C., 147; 16 Wall., 241; 63 S. C., 434. *Negotiability of mortgage depends on character of instrument secured:* 42 S. C., 170; 16 Wall., 271; 38 S. C., 138. *Trust in personalty may be proved by parol:* 14 S. C., 217. *What acts of agent are binding on principal:* 2 Bay, 205; 3 Rich., 42; 1 Ency., 993, 994, 962; 4 Strob., 427; 1 Hill, 204. *Power can not be redelegated by agent:* 1 Ency., 972, 1004-5, 1027-8; Story on Ag., Secs. 78, 98, 99, 113, 126, 128. *Assignee of non-negotiable note takes subject to defenses:* 42 S. C., 420, 291; 16 Wall. 273; 38 S. C., 138; 42 S. C., 170; 63 S. C., 433; Kerr on F. & M., 222; 2 Ency., 1080; Mech. on Ag., Sec. 786; 6 Eq., 299; 137 U. S., 216.

*Messrs. Johnson & Buck,* contra. *Mr. Buck* cites: *This is a sealed note or single bill:* 68 S. C., 246. *Ordinarily, assignee takes subject to defenses which maker had against payee:* 68 S. C., 246; 38 S. C., 138; 63 S. C., 438. *Ordinarily, no counterclaim or equitable defense can be set up in action of claim and delivery:* 15 S. C., 458; 54 S. C., 400. *But equitable defense, putting in issue the making of a contract itself, is permissible:* 45 S. C., 111. *Refers to equitable defenses existing at time of execution of contract:* 27 S. C., 226. *Innocent third parties may safely deal with an agent as having all the authority with which he is ostensibly clothed:* 47 S. C., 147; 13 S. C., 5; 27 S. C., 134. *Unauthorized acts of an agent afterwards confirmed are binding:* 56 S. C., 320. *Defendant must establish affirmatively equitable defense by greater weight of testimony:* 45 S. C., 121; 47 S. C., 139; 78 S. C., 430. *The scope of the agency and powers of an agent are questions for the jury:* 57 S. C., 347. *After condition broken in chattel*

*mortgage, title to property vests in legal holder:* 44 S. C., 315. *And where equities are even, title will prevail:* 55 Miss., 458; 71 Iowa, 256; 21 Minn., 435, 440.

April 1, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This was an action for claim and delivery, instituted by plaintiff against defendant on the 27th day of February, 1902, to recover the possession of certain personal property described in the complaint.

The case came on for trial at the spring term of Court, 1903, for Marion County, before his Honor, Judge D. A. Townsend, and a jury, and resulted in a verdict for the plaintiff for the recovery of the possession of the property sued for, or for one thousand dollars, the value thereof, in case a delivery could not be had.

The defendant appealed to the Supreme Court from the rulings of Judge Townsend, which appeal was heard and the judgment of the Circuit Court reversed and a new trial ordered by the Supreme Court. 68 S. C., 246, 47 S. E., 71.

The case came on for trial before his Honor, Judge Gage, and a jury at the spring term of Court, 1906, and resulted in a verdict in favor of the plaintiff for the recovery of the possession of the property sued for or for five hundred dollars, the value thereof, in case a delivery could not be had.

Within ten days after the rising of the Court, the defendant gave due notice of intention to appeal from the judgment entered on said verdict, and from the rulings and charge of the presiding judge.

The complaint sets forth that the defendant executed his sealed note to B. S. Ellis for the sum of one thousand dollars due on the first day of October, 1901, with interest after maturity at the rate of eight per cent. per annum, and on the same day, the defendant executed a chattel mortgage to Ellis for five mules, one horse, two wagons, one fifteen-horsepower engine, twenty-five horsepower boiler,

one fifty-saw Winship gin, feeder, and condenser with belts, shaftings, pulleys, etc., the said property to be delivered to the said Ellis on demand.

That on the 20th day of June, 1901, the said chattel mortgage was delivered to the register of mense conveyances of said county for record and was recorded.

That on the 21st day of June, 1901, the said B. S. Ellis for value received duly assigned to plaintiff, J. C. Stevenson Company, all his right, title and interest in and to the said note, and likewise in and to the said chattel mortgage given to secure the same.

That the plaintiff is now the lawful owner and holder of the said sealed note and chattel mortgage, and the said Bethea has not paid any part of the same.

That after the first day of October, 1901, the said plaintiff demanded possession of said personal property, which the defendant refused and still refuses to yield to him. Wherefore the plaintiff demands judgment in the usual form in claim and delivery.

The defendant admits that he executed the said sealed note and chattel mortgage to the said Ellis, but asserts that at the time, the 21st day of June, 1901, he was not indebted to the said Ellis but transferred the note and mortgage to him in order to obtain through the said Ellis the sum of seven hundred and fifty dollars in cash, intending therewith to pay and discharge a certain prior mortgage due to C. A. Woods, as attorney for another, who threatened to foreclose his mortgage, to which mortgage indebtedness B. S. Ellis was his surety. The said Ellis was not to furnish the money himself but was to negotiate a loan with another therefor.

The Supreme Court in 68 S. C., 246, 47 S. E., 71, held that the note which had been treated as a promissory note in the previous litigation was a sealed note, subject to all the equities incident to a sealed note, and that the Circuit Judge

having refused to allow testimony in regard thereto committed error, and, therefore, granted a new trial.

From the evidence it appears that when B. S. Ellis sought to obtain a loan in cash of seven hundred and fifty dollars, he sent through Mr. J. B. DuBose, who represented him, one thousand seven hundred and fifty dollars' worth of liens to J. C. Stevenson Company, in Wilmington, North Carolina, to obtain from either one of the banks in Wilmington the loan of seven hundred and fifty dollars, and that Mr. Ellis' agent and J. C. Stevenson applied to both banks in Wilmington to obtain such loan but failed to obtain the same. Among the securities referred to was the one thousand dollar note and mortgage of P. W. Bethea due on the first of October, 1901, accompanied by a certificate signed by P. Y. Bethea, cashier of the Marion Bank, Marion, S. C., that he regarded the securities as good and abundant collateral for seven hundred and fifty dollars.

Thereupon the said DuBose deposited with J. C. Stevenson Company in their safe, all the securities which we have before referred to, subject to the order of B. S. Ellis.

It should be stated that J. C. Stevenson Company expressed a desire to trade supplies for said securities, but DuBose claimed that he had no authority to make any trade, and returned to Marion, where his connection with the matter ceased.

After some interchange of views between Ellis and J. C. Stevenson Company, Ellis made a formal assignment and transfer of said securities to J. C. Stevenson Company, and that firm, Stevenson Company, sent two hundred and fifty-eight dollars' worth of supplies to Philip W. Bethea and afterwards furnished other supplies to Ellis by reason of said assignment and transfer, and at the end of the year Ellis was indebted to Stevenson Company in the sum of two thousand eight hundred dollars

No testimony was offered as to what information was furnished the defendant Philip W. Bethea by B. S. Ellis, on or immediately after the 21st of June, 1901, touching the note for one thousand dollars and the mortgage given to secure the same; Bethea on the stand as a witness made no admission in regard thereto; F. C. Rogers, the confidential clerk of Ellis, made no reference thereto; Ellis was not examined as a witness. J. B. DuBose seems to have no knowledge of P. W. Bethea wishing a loan of money, but it certainly appeared by the testimony that in addition to the two hundred and fifty-eight dollars furnished by Stevenson Company to Bethea other advances were made to him in supplies by Ellis.

It was in proof that B. S. Ellis, whose first cousin was the wife of Philip W. Bethea, loaned his credit to the said Bethea for thousands of dollars, being at one time his surety for over six thousand dollars.

There was no proof that P. W. Bethea was notified by Ellis or Stevenson Company of the change in the use of the sealed note or chattel mortgage; it must also be remembered that though the assignment of the sealed note and chattel mortgage to Stevenson Company were dated the 21st day of June, 1901, still it did not take place in point of fact until some time in July.

No proof was offered as to any demand being made by P. W. Bethea upon B. S. Ellis for the return of the sealed note and chattel mortgage, although it was in proof as before stated, that P. W. Bethea did receive supplies, two hundred and fifty-eight dollars' worth, directly from Stevenson, and that the said Bethea received hundreds of dollars in supplies from Ellis after the 21st day of June, 1901.

There is no doubt from the testimony that J. C. Stevenson furnished far more in supplies to B. S. Ellis than one thousand seven hundred and fifty dollars, the amount of the securities assigned by Ellis to Stevenson Company.

The question presented to this Court is, Does the dealings of B. S. Ellis with J. C. Stevenson Company operate as an estoppel to P. W. Bethea to deny the assignment of the sealed note and chattel mortgage as to J. C. Stevenson Company? It is well understood that in supporting such a proposition, the law requires that the proof shall be clear and convincing of the transaction which in the end makes an estoppel. When we take into consideration the fact that the sealed note and chattel mortgage were placed upon record in the County of Marion upon their execution and no demand was ever made therefor by P. W. Bethea, although he knew that he had placed the same in the hands of B. S. Ellis with the authority to negotiate a loan of seven hundred and fifty dollars, and that said loan was never made and that no demand for the cancellation of the papers was made upon Ellis therefor, and that he was receiving hundreds of dollars of supplies from Ellis and two hundred and fifty-eight dollars at least direct from Stevenson, it does seem that the conduct of P. W. Bethea was inconsistent with the evidence he proposed, or the title of claim he proposed to set up. 8 Enc. P. & P., 11.

"An estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the act of the party himself either by conventional writing or by representations express or implied, *in pais*" (16 Cyc., 679) ; or, as is otherwise well said at page 680 of the same book, "If a person by his conduct induces another to believe in the existence of a particular state of facts, and the other acts thereon to his prejudice, the former is estopped as against the latter, to deny that the state of facts does in truth exist." This doctrine is well illustrated by the case of *Lites* v. *Addison,* 27 S. C., 226, 3 S. E., 214.

We must overrule the first exception of the defendant, because the opinion of the Supreme Court merely granted

a new trial because Judge Townsend overlooked the difference between a sealed note and a promissory note and refused to allow testimony to be received in support of an inquiry into the consideration of the sealed note.

2. The Circuit Judge made no mistake that the issue made at the recent trial was a new issue and not passed upon by the Supreme Court in the first case. This exception is overruled.

3. The Circuit Judge made no mistake in charging the jury on the subject of estoppel, for while Bethea did not make an admission by word of mouth about the note and mortgage, yet by his conduct it is calculated to influence Stevenson. This exception is overruled.

4. The Circuit Judge made no mistake by interjecting the subject of estoppel before the plaintiff could close his case, for by so doing he advised counsel on both sides of the effect of that plea on his mind preparatory to his charge and as an aid to counsel by developing testimony bearing on the issue of estoppel. This exception is overruled.

5. His Honor did not err in refusing to charge defendant's first request to charge, for while he admitted that a note under seal and mortgage securing the same executed by one party to procure a negotiation for a certain sum of money, yet he did hold that the conduct of that party, Bethea, was a proper consideration for the jury; and any change made by the parties thereto as evidenced by their conduct. This exception is overruled.

6. The Circuit Judge properly refused defendant's second request to charge, wherein it is alleged that should an agent assign paper to another as collateral for goods or drafts drawn and all used in agent's business, such papers could not be enforced in the courts of this State, because he left it to the jury to say that when the first object was not accomplished the conduct of the defendant here misled the plaintiff. This exception is overruled.

7. His Honor when he refused the defendant's third request committed no error, because when B. S. Ellis as mortgagee was given a sealed note and assigned it to the plaintiff, the plaintiff as assignee took both mortgages with all trusts, all of which was true; but if a change was made by the parties, Ellis as assignee of the one and the conduct of Bethea on the other part would change the relation of the parties thereto, such a charge would be improper. Let this exception be overruled.

8. Because the Circuit Judge committed no error when he charged that although there was all the difference in the world between a promissory note and a single bill, yet when the relation of the obligor and the obligee were changed as is contended in the testimony in this case, a new issue was presented between the parties and no longer the original rights of obligor and obligee subsisted. This exception is overruled.

9. The Circuit Judge did not err in refusing to charge defendant's fifth request, that if B. S. Ellis took the papers in question for the sole purpose of raising money for Bethea to be applied to a debt due a third party by Bethea and if instead of raising money he transferred them to J. C. Stevenson Company, yet if the parties changed their designs after the execution of the papers in which change P. W. Bethea participated to a large extent, a question would be raised for the solution of the jury: what effect such change would have upon the parties. This exception is overruled.

10. This is overruled because it is virtually the same as the ninth.

11. The Circuit Judge did not err in refusing to charge defendant's seventh request; this is controlled by the others, and is overruled.

12. This exception must be overruled because there was no testimony offered in reference thereto.

13. The Circuit Judge did not err in refusing to charge defendant's ninth request. It may be a question in the case as to what Bethea owed Ellis at the time the papers were given. It is true such indebtedness was not included in the amount named in the sealed note, yet that it existed may explain the conduct of the parties toward each other. This exception is overruled.

14. His Honor did not err in refusing to charge defendant's tenth request, "that if Ellis used the papers in question for a different purpose than for which they were given and Bethea did not ratify his act, then your verdict must be for the defendant." The Circuit Judge was careful to explain the effect of this matter, although he did not choose to explain his suggestions in the language employed by the defendant. This exception is overruled.

15. The Circuit Judge did not err when he refused to charge defendant's eleventh request. The Circuit Judge in his charge had held, that if Bethea established the allegation of his answer by the preponderance of the testimony, then the verdict must be for the defendant; he did not use the identical language, but the idea was plainly pressed upon the jury. This exception is overruled.

16. His Honor did not err when he refused defendant's twelfth request to charge, as to what Bethea owed Ellis before or after the transfer of the papers to Stevenson Company. This could have no bearing on the case unless the papers and the testimony in relation thereto convinced the jury that it was important to consider what real relation subsisted between the parties. This exception is overruled.

17. His Honor did not err in refusing to charge defendant's request presented here. It follows that the note and mortgage being under seal Ellis could only transfer to Stevenson the right, title and interest he had in the same. This exception is overruled.

18. The eighteenth exception was withdrawn.

Having disposed of all questions herein, we will not refer to any suggestions made by the plaintiff-respondent to sustain the views hereto presented.

The judgment of this Court is, that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. JUSTICE GARY, *concurring.* On the first of October, 1901, the defendant made his sealed note whereby he promised to pay B. S. Ellis the sum of $1,000.00; and to secure the payment thereof, executed a mortgage on certain chattels in favor of said Ellis.

The note and mortgage were executed, for the purpose of enabling Ellis to hypothecate them, in order to raise funds to the amount of $750.00, so as to satisfy a mortgage on other property belonging to the defendant, which was held by a third party.

Ellis transferred the note and mortgage to the plaintiff, in consideration of the sum of $256.82 to be advanced in cash, and the balance in groceries. The cash portion was paid to Ellis on his drafts. The groceries were shipped to Ellis, except those which were shipped directly to the defendant, amounting to $258.00.

While there are questions involved which are dependent upon the law relative to the rights of an assignee, nevertheless the controlling question arises out of the law of agency.

The acts of Ellis were expressly authorized to the extent of assigning the note and mortgage and accepting the advances in money, amounting to $256.82, and while his other acts were not authorized, they, however, were within the scope of his employment. Even conceding that the agreement to accept advances in supplies was a fraud upon the rights of the defendant, he is not in a position to complain of such fact, as Ellis was his agent.

In Story on Agency, Section 452, the rule is thus stated:
"It is a general doctrine of law 'that, although the prin-
cipal is not ordinarily liable (for he sometimes is) in a
criminal suit for the acts or misdeeds of his agent, unless,
indeed, he has authorized or co-operated in them, yet he
is held liable to third persons in a civil suit for the frauds,
deceits, concealments, misrepresentations, negligences and
other malfeasances, misfeasances and omissions of duty of
his agent, in the course of his employment, although the
principal did not authorize or justify or participate in, or
indeed know of such misconduct, or even if he forbade the
acts or disapproved of them. In all such cases the rule
applies *respondeat superior,* and it is founded upon public
policy and convenience, for in no other way could there be
any safety to third persons in their dealings, either directly
with the principal or indirectly with him, through the instru-
mentality of agents. In every such case the principal holds
out his agent as competent and fit to be trusted, and thereby,
in effect, he warrants his fidelity and good conduct in all
matters within the scope of the agency."

This doctrine is sustained by the following authorities:
*Johnson* v. *R. R. Bank,* 3 Strob. Eq., 263; *Reynolds* v.
*Witte,* 13 S. C., 5; *Rucker* v. *Smoke,* 37 S. C., 377, 16 S.
E., 40; *Hutchison* v. *Real Estate Co.,* 65 S. C., 45, 43 S. E.,
295; *Mitchell* v. *Leach,* 69 S. C., 413, 48 S. E., 290; *Wil-
liams* v. *Tolbert,* 76 S. C., 211.

For these reasons I concur in the conclusion announced
by Mr. Chief Justice Pope.